(No. 5293. Decided May 23, 1905.)

HANS BENSON et al., Respondents, v. THE CITY OF SPOKANE,
Appellant.[1]

MUNICIPAL CORPORATIONS—BRIDGES—NEGLIGENCE—DEFECTIVE CONDI-
TION—DUTY OF CITY—INSTRUCTIONS. In an action for personal in-
juries sustained through the defective condition of a bridge, an in-
struction not technically accurate, declaring it to be the duty of
the city to use reasonable care to keep its bridges in good, safe con-
dition, and to the effect that it would be liable for failure to so keep
them in such condition, is not prejudicial error when immediately
followed by an instruction that the law did not require the city to
keep its bridges absolutely safe, and correctly defining ordinary care
and limiting the duty of the city to reasonable and ordinary care in
guarding against accidents.

SAME—PLEADING AND PROOF—UNESSENTIAL DETAILS—DEFECT THE
PRIMARY CAUSE OF THE ACCIDENT—INSTRUCTIONS. In an action for
personal injuries sustained by reason of a defect in a bridge, which
caused the horse to tip over the buggy, the plaintiff is not required
to prove the allegation that the horse stepped into the hole and then
violently backed off; and it is proper to instruct that the defendant
is liable if the horse shied at the hole without stepping into it pro-
vided that the defect was such as to cause an ordinarily gentle horse
to shy and the plaintiff was free from negligence; since proof of
unimportant details explaining the result is not essential where the
defect complained of is the primary cause of the accident.

Appeal from a judgment of the superior court for Spo-
kane county, Belt, J., entered March 7, 1904, upon the
verdict of a jury rendered in favor of the plaintiffs, in an
action for personal injuries sustained by reason of a defect
in a bridge. Affirmed.

John P. Judson and A. H. Kenyon, for appellant.

Horace Kimball and Miles Poindexter, for respondents.

MOUNT, C. J.—Action for personal injuries. The plain-
tiffs obtained a judgment in the court below, and defendant
appeals. The respondent Mrs. Benson, while attempting to
drive a horse and buggy upon a bridge maintained by the

[1] Reported in 80 Pac. 1106.

city of Spokane within its borders, was thrown from her buggy, and severely injured. The negligence complained of was, that the city had permitted the bridge to become and remain out of repair, so that the approach to the bridge contained a hole in the floor, eight or ten inches wide and four feet long; that, when she came up to the bridge, not knowing the condition thereof, and with nothing to put her on notice of the condition, her horse stepped into the hole, the buggy was thrown forward, then backward, and tipped to one side, so that she was thrown out upon the bridge. By the fall her right hip was broken and her right shoulder was dislocated. The bridge was in common use upon a public highway, and had remained in an unsafe condition for more than a week. The city had been notified of the condition several days prior to the accident. The case was tried to the court and a jury, and a verdict was returned for $3,000.

The only errors alleged are based upon instructions given by the court, and instructions requested by appellant and refused by the court. The court instructed the jury as follows:

"I instruct you that the defendant . . . is bound under the law to use all reasonable care and caution to keep its streets, sidewalks and bridges in safe condition for travel in the ordinary mode of travel, and that for failure to so keep its bridges, streets and sidewalks in safe repair it is liable to one who suffers injury or damage by reason of their failure to keep the bridges, streets and sidewalks in reasonable repair; provided, however, the injured party himself has used all reasonable care and caution to prevent injury to himself. . . . I instruct you if you believe from a preponderance of the evidence that the corporate authority of the city of Spokane did not use reasonable care and supervision over that portion of the street where the injury in question is alleged to have occurred, that is to say, the bridge over Crystal Springs Creek, to keep in good, safe condition, and by that means allowed it to become defective and unsafe, as alleged in plaintiffs' complaint, and

if the jury further believe from a preponderance of the evidence that the plaintiff, in attempting to drive over the bridge, by reason of such defect was injured and has sustained damage thereby as alleged in her complaint, and that at the time she was exercising reasonable care and. caution to avoid such injury, that the defendant is liable and your verdict should be for the plaintiff."

While these instructions may not be technically accurate in their wording, they convey the idea that it is the duty of the city to use reasonable care to keep its bridges in a reasonably safe condition for ordinary travel. The court said that it was the duty of the city to exercise reasonable care to keep its bridges in good, safe condition. If there is any doubt that these instructions impose a greater duty upon the city than the law requires, that doubt is removed by other instructions immediately following, in which the court said:

"Ordinary care as used in these instructions is that degree of care which an ordinarily careful and prudent person would or should exercise under like or similar circumstances. The law does not require that the streets and bridges of the city shall be kept absolutely safe, but only that reasonable care shall be exercised to keep them in a reasonably safe condition. The city is not an insurer of safety. It does not undertake to warrant against accident and injuries. It is not bound to exercise extraordinary care, and if you believe from the evidence that this defendant did use ordinary care and reasonable care and diligence in guarding against the occurrence of accidents by reason of the condition of the bridge, but nevertheless the accident complained of occurred, then your verdict must be for defendant."

Taking all these instructions together, it is clear that the duty of the city was properly defined to the jury.

The court gave the following instruction:

"I instruct you further, gentlemen, that if you believe that there was a hole in the bridge, and that the defendant knew, or ought to have known it was there, as I have instructed you, but that the horse did not step into the hole but instead

shied at the hole, and backed away, cramping the buggy, thus throwing the plaintiff out, and she was using due care and caution to prevent injury to herself, then the defendant would be liable if plaintiff was injured; provided, however, you further find that the hole in the bridge was such as was calculated to cause an ordinary horse to shy and become frightened. And it is for you to determine whether the hole in the bridge, if there was one there, was such an object as was calculated to cause horses generally to shy and become frightened."

The way the accident happened, as described in the claim filed with the city, the language of which claim is substantially copied in the complaint, is as follows:

"The horse, hitched and attached to the buggy in which the said Karstean Benson was sitting, passed on said bridge, drawing said buggy with him, and the said horse did step into the aforesaid hole in the planking of said bridge, which caused said horse to pitch forward, jerking said buggy with him, and said horse in endeavoring to extricate his foot from such hole in said bridge jerked violently backward, jerking said buggy with him and throwing said Karstean Benson violently out of said buggy, causing her to fall violently and with great force and shock on said bridge."

There is substantial evidence in the record supporting the statements as alleged. But the theory of the defense was, that the horse came up to the hole in the bridge and stopped; that thereupon the plaintiff, or her daughter who was riding in the buggy with her, attempted to force the horse over the hole by striking him with the lines, and that the horse refused to go, but backed away, turning the buggy down an embankment and throwing the plaintiff out. Appellant contends that the instruction last above quoted permits the plaintiffs to recover, independently both of the cause of action stated in the claim filed with the city, and of the allegations of the complaint. But we think this contention is not well founded. If the primary cause of the injury was the defective and unsafe condition of the bridge, it makes no difference whether the horse stepped into the hole with one,

or with two, of his feet, or was thereby frightened and backed away, or whether he was frightened and backed away before he stepped into it at all. The hole, in any event, was the cause of the horse backing, and the result is the same to the respondent. It was no more necessary to prove that the horse actually put one foot into the hole than it was to prove that the horse first fell forward and then ran backwards. None of these things were essential to state a cause of action. They served only to explain the result. These facts may vary in different cases, or the witnesses may vary as to these unimportant details in each case, while the cause and result still remain unchallenged. In *Durham v. Spokane,* 27 Wash. 615, 68 Pac. 383, where this same question was raised, we said:

". . . it can make no difference as to the city's liability therefor whether the injured person stepped into an existing hole or a hole made by her at the time of the injury, or, if she did step into an existing hole, whether that particular hole existed for a long or for a short period of time, provided, of course, she was not guilty of contributory negligence."

The evidence offered by the appellant upon this point was material only as tending to show contributory negligence. If the horse saw the hole and stopped, and was urged to go and refused, these facts were material to show that the respondent knew, or should have known, of the danger, and therefore was guilty of negligence herself. But it was unimportant to contradict the fact that the horse stepped into the hole, because that fact itself was immaterial except as it was a part of the *res gestae* leading up to the result.

With this view of the matter, it is unnecessary to discuss the instructions requested by the appellant and refused by the court, because the requested instructions were based upon the theory that the instruction above discussed was erroneous. Instructions requested bearing upon other ques-

tions were given, in substance, by the court, and it is there-
fore unnecessary to notice them. There are other errors
assigned, but none of them are meritorious. The instruc-
tions given by the court fairly and fully covered the law
of the case.

There is no error apparent in the record. The judg-
ment is therefore affirmed.

DUNBAR, HADLEY, and FULLERTON, JJ., concur.
RUDKIN, ROOT, and CROW, JJ., took no part.